**STROUD v. SWOPE, Warden.**

No. 12595.

United States Court of Appeals Ninth Circuit.

March 9, 1951.

Nathan Cohn, San Francisco, Cal., and Robert Stroud, in pro. per., for appellant.

Frank J. Hennessy, U. S. Atty., Joseph Karesh, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before BONE, ORR and POPE, Circuit Judges.

BONE, Circuit Judge.

Appellant, an inmate of the United States Penitentiary at Alcatraz, California, filed in the lower court a pleading which he entitled a petition for an injunction. He demanded an order restraining the warden of that institution from what he denominated an "unlawful interference with the lawful business interests of petitioner, or depriving the petitioner of property rights secured to him under the Constitution and laws of the United States."

The actions of the warden are said to result from a "conspiracy" organized in 1931 by officials of the Federal Bureau of Prisons and continued since 1931, this conspiracy operating under the guise of a general order issued in 1931 purporting to regulate the administration of prison operations, the order among other matters forbidding the transaction of business by inmates of federal prisons. It is charged that while the order purports to be of general application to all prisons and prisoners it was purposely directed at and against petitioner, and as a result it has damaged him "to the extent of many hundreds of thousands, if not millions of dollars."

Appellant's petition prays for judgment for the amount of his damages (without specifying the party or parties against

whom the damages should be assessed), and that the 1931 order referred to be declared null and void as an invasion of his "constitutional rights."

The lower court denied the petition for an injunction. It also elected to treat the petition as one for the writ of habeas corpus, denied the writ and dismissed the proceeding. This action of the court was clearly justified.

The controlling issue is simple. Is appellant entitled (under the law and prison regulations) to carry on "business affairs" representing efforts to secure publication of a book, or books, which he claims to have been preparing while in prison, and freely to engage in general business correspondence with outside parties to promote and further this business enterprise. While his petition suggests no such limitations, his counsel in this court recognized that restraints are necessarily imposed upon the activities of such prisoners, and suggested to us that we order the warden to permit "a reasonable correspondence" to further appellant's outside business enterprise.

If we assumed the authority to make an order of the character here proposed, it would certainly impose upon the courts the future duty of deciding the issue of "reasonableness" in the event appellant and the prison warden were hereafter unable to agree as to various phases of "business activity" carried on by appellant and the scope of his correspondence relative thereto. We reject the argument that any such

burden of supervision may lawfully be imposed upon, or assumed by, the courts.

Many years ago (1930) Congress saw fit to place many restrictions upon the activities of prisoners. In this connection reference is made to the provisions of Title 18 U.S.C.A. § 4042 relating to the duties of the Bureau of Prisons, the substance of these statutory provisions being carried over into new Title 18 from former Title 18, Section 753a. The "general order" which appellant says was aimed at him and which is part of the "conspiracy" of prison officials to which he refers, was issued under authority of the 1930 statute above referred to. See also directive to prison officials in Manual 96.[1]

To support his contention that his right freely to conduct outside business operations can not be curbed by laws or prison regulations except at the expense of his constitutional rights, appellant cites Price v. Johnston, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356. It is to be noted that in that case the court was constrained to point out, on page 285, of 334 U.S. on page 1060 of 68 S.Ct. that "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." This view is wholly at odds with the sweeping contentions of appellant as to his unlimited right to engage in "outside" business activities.[2]

We think that it is well settled that it is not the function of the courts to super-

1. Paragraph 2 of Section b at pages 2 and 3 of Manual Bulletin No. 96, dated February 23, 1944, issued by the Director of the Bureau of Prisons of the Department of Justice of the United States of America reads as follows: "(2) Non-Relatives—

   Ordinarily, inmate correspondence with friends, business associates, and other persons outside the family may be permitted whenever it does not appear that rehabilitation will adversely be affected or that it will be detrimental to the well-being of the inmate or his correspondent. Correspondence with business associates, of course, must be limited to social matters. An inmate cannot be permitted to direct his business, no matter how legitimate it may be, while he is in prison.

But this does not go to the point of prohibiting correspondence necessary to enable the inmate to protect and husband the property and funds that were legitimately his at the time he entered the institution. Thus a prisoner could correspond about refinancing a mortgage on his home or sign insurance papers, but he could not operate a mortgage or insurance business while in the institution."

2. De Cloux v. Johnston, D.C., 70 F.Supp. 718; Sanders v. Johnston, 9 Cir., 159 F.2d 74; Numer v. Miller, 9 Cir., 165 F.2d 986; Sanders v. Swope, 9 Cir., 176 F.2d 311 and authorities cited in these cases. Cf. Snow v. Roche, 9 Cir., 143 F.2d 718, certiorari denied, 323 U.S. 788, 65 S.Ct. 311, 89 L.Ed. 629; Shepherd v. Hunter, 10 Cir., 163 F.2d 872, 874.

intend the treatment and discipline of prisoners in penitentiaries, but only to deliver from imprisonment those who are illegally confined.[3]

Some of appellant's correspondence set forth in the record carries acidulated comments of a character well calculated to arouse antagonism in the recipient. The warden may well have decided that a wise discretion called for a curb on this type of correspondence.

Appellee has suggested that appellant's right of action, if any, would properly lie against appellee's superiors in the District of Columbia. For the reasons above indicated we think it unnecessary to consider this suggestion.

Aside from the purely legal aspects of this case very practical considerations militate against granting to appellant the relief for which he prays for to do so would open the door to a flood of applications from federal prisoners which would seriously hamper the administration of our prison system.

█ Congress has carefully refrained from imposing upon the courts the authority to interfere with matters of prison discipline affecting activities of the character revealed by the record in this case. The judgment of the lower court dismissing the petition is affirmed.

POPE, Circuit Judge (concurring).

I concur in Judge BONE'S opinion. Appellant, having neither constitutional nor statutory right to write letters to his business agents, and having previously been permitted to write and publish two books while in prison, sues the warden because the latter has returned to him, without mailing, the defamatory, scurrilous, and abusive letters which appellant attaches to his petition. I think that a judge of a court as busy as the one below, should not be compelled to listen to such nonsense.

**3.** Sarshik v. Sanford, 5 Cir., 142 F.2d 676; Platek v. Aderhold, 5 Cir., 73 F.2d 173, 175; Kelly v. Dowd, 7 Cir., 140 F.2d 81, 83, certiorari denied, 320 U.S. 786, 64 S.Ct. 158, 88 L.Ed. 472; Snow v. Roche, 9 Cir., 143 F.2d 718, certiorari denied 323 U.S. 788, 65 S.Ct. 311, 89 L.Ed. 629; Shepherd v. Hunter, 10 Cir., 163 F.2d 872, 874; Taylor v. United States, 9 Cir., 179 F.2d 640, 643. See also Hauck v. Hiatt, D.C., 50 F.Supp. 917; Crites v. Hill, D.C., 9 F.Supp. 975.